/PEOPLE *v.* ABBOTT./

1. MANSLAUGHTER—UNDESIGNED KILLING AS RESULT OF UNLAWFUL ACT—ABORTION.

   A person who, while doing or attempting to do an unlawful act dangerous to human life, undesignedly kills another, is guilty of manslaughter at least, even though the act attempted was not unlawful at the common law. So *held* where the death of a woman pregnant, but not with a quick child, resulted from an attempt to procure a miscarriage by means of instruments, made punishable as a misdemeanor by 2 How. Stat. § 9108.

2. SAME—INFORMATION AND PROOF—VARIANCE—IMMATERIAL ALLEGATION.

   An information for manslaughter, which clearly apprises the respondent that he is charged with causing the death of a pregnant woman through an unlawful attempt to procure a miscarriage, but alleges that the act was committed "with force and arms," will support a conviction under proof that the deceased consented to the attempt; the question of consent being immaterial.

3. SAME—EVIDENCE—HEARSAY.

   The testimony of a physician summoned to attend a woman upon whom a criminal operation had been attempted, that he understood that certain money paid to him was paid on behalf of respondent, charged with manslaughter in causing the death of the woman by means of such attempt, is hearsay, and inadmissible.

4. SAME—HOSTILE WITNESS.

   The fact that such witness is adverse to the prosecution does not justify the introduction of such evidence.

5. Same.

Upon a prosecution for manslaughter in causing the death of a pregnant woman by procuring a miscarriage by means of instruments, statements made in the absence of respondent, by the midwife who was alleged to have performed the operation, that she was in the habit of performing them for the purpose of abortion and miscarriage, and describing the methods adopted, are inadmissible.

Error to Hillsdale; Lane, J. Submitted January 28, 1898. Decided March 15, 1898.

Remus M. Abbott was convicted of manslaughter. Reversed.

*Noah P. Loveridge* and *Corvis M. Barre*, for appellant.

*Fred A. Maynard*, Attorney General, *W. H. Frankhauser*, Prosecuting Attorney, and *Guy M. Chester*, ex-Prosecuting Attorney, for the people.

Hooker, J. The defendant was convicted of manslaughter, as an accessory before the fact, in causing the death of Viola Stevens through the use of an instrument in an attempt to cause a miscarriage.

To understand the points raised, reference should be had to the statutes relating to the subject. 2 How. Stat. § 9106, provides that the willful killing of an unborn quick child, by any injury to the mother which would be murder if it resulted in the mother's death, shall be manslaughter. Section 9107 makes an attempt to destroy an unborn quick child through medicine administered to, or instruments used upon, the mother, manslaughter when followed by the death of the child or mother, unless necessary to preserve the life of the mother, or so advised by two physicians. Section 9108 punishes as a misdemeanor the willful employment of drugs, etc., or instruments upon a pregnant woman, with intent to procure a miscarriage, subject to the exceptions mentioned in the preceding section. See 2 How. Stat. § 8438; *People* v. *Olmstead,*

30 Mich. 431. The information contained separate counts for murder and manslaughter, and also a count upon the last-mentioned section, viz., 9108. In his charge to the jury the learned circuit judge said that the defendant could not be convicted of murder, and that he could not be convicted of statutory manslaughter under section 9107, because Viola Stevens was not shown to have been pregnant with a quick child, in the sense that such term is used in the law. He instructed them that the defendant might be convicted of a misdemeanor, under section 9108, or that he might be found guilty of manslaughter, upon the theory that death to the mother resulted from the act, which was made unlawful and punishable by section 9108, under the well-established rule that "if a person, whilst doing or attempting to do another act, undesignedly kill a man, if the act intended or attempted were a felony, the killing is murder; if unlawful,—*malum in se*,—but not amounting to a felony, the killing is manslaughter; if lawful,—that is, not being *malum in se*,—homicide by misadventure merely." See *People* v. *Scott*, 6 Mich. 293.

The defendant's counsel take the position that under these statutes there can be no conviction of the offense of murder where death is caused by any of the acts therein made punishable; that there can be no conviction of manslaughter in such cases except when the woman was, at the time of the commission of the act, pregnant with a quick child, as provided in sections 9106, 9107; and that it necessarily follows—the judge having determined and instructed the jury that Viola Stevens was not shown to have been pregnant with a quick child—that the defendant could be convicted, if at all, only of the misdemeanor created by section 9108. This contention rests upon the proposition that such act was not unlawful at the common law, it being no offense to attempt to produce an abortion upon a woman pregnant, but not with a quick child, with her consent, and upon the theory that the legislature has, by section 9107, shown an intention to reduce the offense from murder to manslaughter in cases where a woman

pregnant with quick child comes to her death in this way, and upon the fact of its failure to provide in section 9108 additional punishment where the woman upon whom a miscarriage is sought to be produced dies in consequence thereof, from which it is said that it must be inferred that the intention was to make the penalty prescribed by that section the limit in all cases.

We think this theory should not prevail. If we could say that the law recognizes the lawfulness of attempts to produce miscarriages, there would be more force in the contention that a fatal result to the mother would be excusable homicide, though we do not mean to intimate such an opinion; but the legislature have been to the trouble to make the mere attempt to cause a miscarriage punishable by a year's imprisonment, and we cannot believe that they intended that the death of the mother should be treated as a misadventure. It is more reasonable to believe that they left that subject to be governed by existing rules of law. Upon this theory it was reasonable for the circuit judge to say that the defendant could not be convicted of murder, because that would have been the extent of the offense had the child been quick; and it is not to be supposed that the law would be more severe in a case where the child had not quickened than where it had, even if, under existing rules, the passing of section 9108 would otherwise have made such offense murder. See *Com.* v. *Railing,* 113 Pa. St. 37. Without deciding this question, however, —it being unnecessary,—we must determine whether the conviction of manslaughter can be upheld. It may be, unless it can be said (1) that at common law a conviction could not be based on accidental killing through an unlawful act less than a felony, or (2) that it cannot be based on an act made unlawful by statute.

Mr. Bishop asserts that "if the act be both wrongful and in its nature dangerous to life, even if it be a misdemeanor, yet, if the element of danger concurs with the element of the unlawfulness of the act, the accidental causing of death thereby is murder." 2 Bish. Cr. Law, § 691.

See Tiff. Cr. Law, 815.   Counsel contend that this is not
a dangerous act, basing the contention upon the evidence
of physicians, which is said to show that not more than 1
per cent. of cases are fatal to the woman, where the child
has not quickened.   We doubt if the effect of this statute
is to depend upon the opinions of witnesses upon the
question of the degree of danger.   But, however that
may be, the act was a misdemeanor, and accompanied by
some danger to life, and we shall find much authority for
holding that an indictment for manslaughter will lie in
such a case.

"If a man happen to kill another in the execution of a
malicious and deliberate purpose to do him a personal
hurt by wounding or beating him, or in the willful com-
mission of any unlawful act which necessarily tends to
raise tumults and quarrels, and consequently cannot but
be attended with the danger of personal hurt to some
one or other,—as by committing a riot, robbing a park,
etc.,—he shall be adjudged guilty of murder."   1 Hawk.
P. C. ( Curw. Ed.) p. 86, § 10.

Again, Bishop says:

"And if the act were not directly dangerous, yet done
with the motive of committing a misdemeanor, the offense
would be manslaughter; but if, still not being dangerous,
the motive were merely the commission of a civil trespass,
the unintended death would not be indictable under all
circumstances, though under some it would be man-
slaughter.   To lay down, as to this, an exact rule, sus-
tained by authorities, seems impossible.   But, to illus-
trate, when a man discharges a gun at another's fowls,
in mere wanton sport, he commits, if he accidentally kills
a human being, the offense of manslaughter, while his
intended act is only a civil trespass; and the same is the
result when the firing of the gun which produces death is
with intent simply to frighten another, or when one care-
lessly discharges the contents of firearms into the street.
And where a lad in a frolic, without meaning harm to any
one, took the trap-stick out of the forepart of a cart, in
consequence of which it was upset, and the carman, who
was in it, putting in a sack of potatoes, was thrown back-
ward on some stones and killed, the lad was held to be

guilty of manslaughter. Where one covers another with straw, and sets fire to it, if the intent is to do a serious bodily harm, and death follows, the offense is murder; if merely to frighten, it is manslaughter. (Errington's Case, 2 Lewin, Crown Cas. 217.)  *  *  *  Giving one physic in sport, if it kills him, is manslaughter." 2 Bish. Cr. Law, § 692, note 4; Id. § 693.

See *People* v. *Scott*, 6 Mich. 292.

Thus it appears that the unlawful act need not always be criminal, and, where the act done is not of dangerous tendency, the offense, when death accidentally follows, may be manslaughter. 2 Bish. Cr. Law, §§ 670, 694. Again, Mr. Bishop says:

"Though the intent of the wrong-doer is not to take human life, and the thing which he does is not of the dangerous sort contemplated in the last few paragraphs, still, by accident, it may result in death. And if it does, and if the thing intended was *malum in se* and indictable, whether as felony or misdemeanor, a discussion in our first volume shows that a felonious homicide is committed." Id. § 694.

See, also, 1 Bish. Cr. Law, §§ 323–336.

In *Com.* v. *Parker*, 9 Metc. (Mass.) 265, it was said:

"The use of violence upon a woman, with an intent to procure her miscarriage without her consent, is an assault highly aggravated by such wicked purpose, and would be indictable at common law. So where, upon a similar attempt by drugs or instruments, the death of the mother ensues, the party making such an attempt, with or without the consent of the woman, is guilty of the murder of the mother, on the ground that it is an act done without lawful purpose, dangerous to life, and that the consent of the woman cannot take away the imputation of malice, any more than in case of a duel, where, in like manner, there is the consent of the parties."

In this case it was held necessary to aver and prove that the woman was quick with child, and the indictment was held bad. The following language is significant:

"There being no averment, in the first count in this indictment, that the woman was quick with child, or any

equivalent averment, and the judge who tried the case having instructed the jury that it was not necessary to prove such averment in the third count, the court are all of the opinion that, although the acts set forth are, in a high degree, offensive to good morals and injurious to society, yet they are not punishable at common law, and that this indictment cannot be sustained." Id. 268.

From this and the foregoing authorities we may infer that, had the act been a misdemeanor at the common law, it would have supported an indictment for manslaughter. We are not advised of any authority which limits the application of this rule to acts which were misdemeanors at common law, nor do we see any good reason for so limiting it. In *Yundt* v. *People*, 65 Ill. 374, it was held that manslaughter would lie in a case closely analogous to the one before us.

· A further contention is that, granting that the act was indictable, the information would not support a conviction under the proof, in that it alleged that the act was committed with force and violence, while the evidence showed that it was done with the consent of Viola Stevens. It is urged that this was a fatal variance. We are cited to the case of *People* v. *Olmstead*, 30 Mich. 438, in support of this claim. In that case the information is very brief, and consists of the single statement that respondent, on a day and year and at a place named, "one Mary A. Bowers feloniously, willfully, and wickedly did kill and slay, contrary to the statute in such case made and provided, and against the peace and dignity of the State of Michigan." There was nothing there to indicate the fact of consent, or even the nature of the act. As the court said: "He might, perhaps, be fairly assumed bound to prepare himself to meet a charge of manslaughter by direct violence or assault." Moreover, that was a statutory charge of manslaughter under section 9107, 2 How. Stat. The information in this case was more specific. It clearly apprised the defendant of the nature of the offense, unless it was necessary to allege Viola Stevens' consent, and to omit the allegation that the act was committed "with

force and arms in and upon one Viola Stevens, in the peace of the people of the State of Michigan then and there being," etc. In our opinion, this was not a fatal variance, especially as it was not necessary to allege or prove the assent of Viola Stevens to the act, and as the offense was the same whether she assented or not.

We are constrained to say that we think the testimony of Dr. Niblack, wherein he stated that he understood that certain money paid him by Mr. Shepard was paid upon behalf of Mr. Abbott, was hearsay, and inadmissible. The prosecuting officer urges that this was an adverse witness, but we think that does not justify the introduction of hearsay evidence. We think also that the statements of Mrs. Saunders, who is said to have performed this operation, that she was in the habit of performing them for the purpose of abortion and miscarriage, and her description to the witness of the method adopted, were inadmissible. It was competent to show the character of the act by proving that Mrs. Saunders was engaged in the business of committing abortions. As in the case of *People* v. *Seaman*, 107 Mich. 348, it was competent to show that others were operated upon for such a purpose by her, as it tended to establish the design with which the operation was performed. This might have been proved by persons cognizant of the fact; but the statements of Mrs. Saunders that she had done these things were but hearsay, though it would have been different had Mrs. Saunders been on trial. In that case they would have had the force of admissions. Here they have not. They were not made in the presence of the defendant, nor do they appear to have been brought to his knowledge, and acted upon.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.