## PEOPLE *v.* HARRIS.

1. HOMICIDE— CRIMINAL LAW— EVIDENCE— MANSLAUGHTER— MIS-
DEMEANOR.

In a prosecution for manslaughter, charged to have been
committed by defendant's striking deceased with his auto-
mobile while committing a misdemeanor by violating the
motor vehicle law (1 Comp. Laws 1915, §§ 4817, 4818,
4824), evidence that defendant was unlawfully transport-
ing intoxicating liquors in the automobile which struck
deceased was properly received, since the agency by which
defendant was so transporting liquor in violation of State
and Federal law was the same agency with which he
killed deceased while committing said misdemeanor, and
it cannot be held, as a matter of law, to be entirely dis-
connected with his negligent act in so driving his car in
violation of said statute.

2. SAME—TRIAL—INSTRUCTIONS—INVOLUNTARY MANSLAUGHTER.

The trial court properly instructed the jury that defendant
could only be convicted, if convicted at all, of involuntary
manslaughter, which is generally defined as the uninten-
tional killing of a person in the commission of an unlawful
act, or the commission of a lawful act in an unlawful
manner.

214—Mich.—10.

3. Same—Manslaughter—Statutory Misdemeanor.

    The fact that the act which caused the death was not a misdemeanor at common law does not relieve the killing from constituting manslaughter, since the act is made a misdemeanor by statute (1 Comp. Laws 1915, § 4824).

4. Same—Evidence—Illegal Act—Negligence.

    Proof that defendant was illegally transporting liquor in the car with which he struck deceased was properly received where the trial court instructed the jury that while it was no evidence of his guilt, it might be considered by them as bearing upon the question of his negligence in driving the car, it being the theory of the prosecution that defendant at the time was hurrying to get through with his illegal load of liquor.

Error to Monroe; Root (Jesse H.), J. Submitted April 19, 1921. (Docket No. 132.) Decided May 5, 1921.

Louis Harris was convicted of manslaughter, and sentenced to imprisonment for not less than 5 nor more than 15 years in the State prison at Jackson. Affirmed.

*Edward N. Barnard,* for appellant.

*William F. Haas,* Prosecuting Attorney (*Willis Baldwin,* of counsel), for the people.

Steere, C. J. Defendant was convicted in the circuit court of Monroe county of the crime of manslaughter, committed on April 29, 1919, by running over with an automobile, and killing, a girl 17 years of age named Gertrude Cousino as he was driving north through the village of Erie on his way from Toledo to Detroit along the thoroughfare known as the Dixie highway. Erie is a small unincorporated village about 10 miles south of the city of Monroe, having a few places of business and a number of residences centered around a four corners where an east and west road

crosses the Dixie highway. On the cross-road just east of the Dixie highway is located a Catholic school. Miss Cousino was killed not long before 9 o'clock in the morning close to the cross-road at the time when pupils were going to the school. Quite a number of them saw the accident and also several older persons who were at or near the crossing. Testimony of the prosecution showed that an automobile (used as a "bread wagon") which carried some pupils to school from north of Erie had just stopped at the northwest corner to discharge them when Miss Cousino was seen to come out from the direction of her home onto the east side of the Dixie highway several hundred feet south of the corner and turn north, walking along the highway on its right, or east, side towards the corners, wearing a red hat as certain witnesses seem to have particularly noticed. An automobile was also noticed at quite a distance beyond her, coming from the south at a high rate of speed. The driver of the auto which brought the pupils from the north and stood at the northwest corner of the crossing testified that the rapidly approaching automobile was at least a quarter of a mile further south when Miss Cousino came out upon the highway, and both were thereafter in plain sight with nothing between them to obstruct the driver's view until it struck her just before she reached the crossing. The on-coming car did not sound its horn nor slacken speed, estimated by various witnesses at from 20 to 35 miles an hour, and as it struck the girl swept or carried her along for nearly 30 feet before she fell to the ground and it ran over her, killing her almost instantly. The automobile was a Studebaker with two men in it. Defendant was driving and did not stop when he struck her, but stepped on his accelerator and hastened away. A young man just then in front of the post office north of the four corners, who heard the accident and saw part of it, caught the

number of the car as it went by increasing its speed. The car cleared the village at an estimated speed of 40 miles an hour and further north the men were seen throwing bottles from their automobile, some of which containing whisky were picked up by children who saw them thrown.    After driving about four miles north of Erie along the Dixie highway defendant drove down a cross-road for about a half mile and stopped within sight of a farm house where he and his companion tore the license numbers from the automobile and threw them in a ditch.    The farmer and his son near whose place they stopped saw them do this and then leave the car, walking back east towards the Dixie highway. Notice of the accident and the number of the car were telephoned the sheriff at Monroe and a deputy from there on his way toward Erie met the two men walking north on the Dixie highway, stopped and talked with them, told of his mission and asked if they had seen anything of such an automobile as he described.    They denied having seen any car and the sheriff went on. Later he learned where the automobile was left and other particulars which led him to return north after these men, whom he overtook and apprehended before they had reached Monroe.    When examined where they left it their automobile was without license plates. Mutilated plates found in a ditch near by were issued by the State of Ohio.    A broken whisky bottle was in the car and on shelves concealed under the running board were found 72 bottles of whisky.

Defendant admitted he was driving the car which struck the girl to Detroit from Toledo, where he had been employed in the liquor business, but denied ever having any whisky in that car.    He testified that he did not see the girl until just as the machine hit her and did not stop for fear he would be mobbed; that the accident occurred as he was passing a horse and buggy standing in front of a store, or shop, and a moving

hay wagon, when the girl suddenly came out in front of his machine as the hay wagon passed. The other occupant of this automobile supported defendant's account of how the accident occurred. The testimony of witnesses for the prosecution was positive that no such vehicles were in the street at the place of the accident or to the south of it, but that the way was clear and the girl in plain sight of the approaching car from the time she came out upon the road until it overtook and struck her. This issue of fact was submitted to the jury under proper instructions.

Defendant's several assignments of error are all directed to the court's admitting, and permitting the jury to consider, evidence that defendant was carrying intoxicating liquor in his car at the time of the accident in violation of State and Federal laws. Upon that proposition appeal is made to the general rule that, in a prosecution for a particular offense, evidence of the accused committing another and distinct offense is inadmissible, and it is urged that evidence of defendant's having whisky in the car which killed Miss Cousino has no tendency to prove that he could and should have seen her in time to avoid the accident, which is the crucial test of his guilt, that evidence of his being a law breaker in transporting or having in his possession intoxicating liquor was wholly irrelevant and prejudicially tended to inflame the minds of the jury against him.

It was the claim of the prosecution that the accidental death of Miss Cousino was caused by defendant while he was intentionally and recklessly engaged in unlawful acts in violation of statutory provisions, and such criminal intent attached to the accidental killing under the law of homicide, making the offense either murder or manslaughter. As covering the unlawful acts which there was testimony tending to show defendant was intentionally committing and for the

perpetration of which he was using the very instru-
mentality which killed Miss Cousino the following stat-
utory provisions are referred to. As directly relating
to the instrumentality used, section 4817, 1 Comp.
Laws 1915, prohibits operating a motor vehicle upon a
public highway in this State at a greater speed than
is reasonable, or so as to endanger the life or limbs
of any person, not in any event to exceed 25 miles an
hour, and requiring that on approaching an intersect-
ing highway the operator shall have the vehicle under
control, operated at such speed as is reasonable and
proper with regard to the traffic then on the highway
and safety of the public. Section 4818 provides:

"Upon approaching a person walking in the roadway
*   *   *   a person operating a motor vehicle shall
slow down to a speed not exceeding ten miles an hour
and give reasonable warning of its approach and use
every precaution to insure the safety of such person."
*   *   *

By section 4824 violation of these provisions is pun-
ishable as a misdemeanor.

Act No. 53, Pub. Acts 1919, makes it a felony to have
in possession or transport intoxicating liquors in this
State, with certain exceptions not applicable to the
evidence offered here. Federal statutes providing pun-
ishment for offenses against interstate commerce make
transportation of liquor between States in the manner
indicated here a misdemeanor with heavy penalties
provided.

Defendant's objections are particularly directed
against the court permitting reference to and admit-
ting evidence tending to show violation of State and
Federal laws relative to transporting liquor. The
agency by which defendant was transporting liquor in
violation of law was the same agency with which he
killed the girl and a connected element in the chain of

cause and effect. That criminal act of so transporting liquor cannot be held, as a matter of law, entirely disconnected with his negligent act in so driving his car which carried it as to cause the fatal accident.

The trial court explained to the jury the different degrees of unlawful killing covered by the information and distinctly charged that defendant could only be convicted, if convicted at all, of involuntary manslaughter, which is quite generally defined by the authorities as the unintentional killing of a person in the commission of an unlawful act, or—

"the killing of a human being, without any intention to do so, but in the commission in an unlawful manner, of an unlawful act, or of a lawful act, which probably would produce such consequences." Wharton on Homicide (3d Ed.), p. 8.

The fact that the act which caused death was not a misdemeanor at common law does not relieve the killing from constituting manslaughter if the act is made a misdemeanor by statute. *People* v. *Abbott*, 116 Mich. 263.

Under the facts in this case as submitted to the jury we can safely rest this inquiry on the following designation of manslaughter by Justice STONE in *People* v. *Barnes*, 182 Mich. 179:

"There seems to be no conflict in the decisions where the respondent is violating some statute, *and* where his manner is negligent and careless; the courts in such cases uniformly hold that he is guilty of manslaughter, if the death of some other person is the result."

The trial court limited consideration of the proof that defendant was engaged in unlawful transportation of liquor to the question of whether or not his criminal conduct in that particular so affected his mind as to stimulate or induce wanton negligence in recklessly

driving his car as claimed, thereby showing its causal connection with the killing.

On that subject the court charged the jury as follows:

"I have already charged you that defendant, if found guilty, must be found guilty of gross and culpable negligence in striking and killing Miss Cousino and that such gross and culpable negligence in driving and managing his automobile was the proximate cause of Miss Cousino's death.   *   *   *

"Gentlemen of the jury, there has been some testimony introduced here in reference to the defendant's automobile containing whisky.  That testimony was admitted not for the purpose of proving the guilt of the defendant on the charge here made against him, but was introduced as bearing upon the question of negligence.  If the defendant knowingly had in his automobile a quantity of liquor which he was transporting from Toledo, Ohio, to Detroit, Michigan, he would be guilty of a felony under the laws of Michigan and he would also be guilty of an offense under the laws of the United States.  And while the fact, if you find it to be a fact, that he had whisky in his automobile is no evidence of his guilt and is not to be considered in this light, yet you may consider it as bearing upon his negligence.  It is the theory of the prosecution that the defendant was violating the statute referred to and transporting liquor illegally and was hurrying through the county of Monroe with his illegal load of liquor. This theory of the prosecution must also be proven to the jury beyond a reasonable doubt before the jury can consider the carrying of the liquor as having had anything to do with the accident.  In any event and even though the defendant was knowingly carrying the liquor, he must be found to have driven his machine at the place of the accident with gross and culpable neglect and that the accident occurred from such gross and culpable neglect."

Under the circumstances of this case proof that defendant was engaged in perpetrating a criminal act with the very agency by which he caused the accidental

death was competent for the purpose to which the court carefully limited it in a very plain and fair charge fully protecting the rights of the accused.

The conviction and judgment of sentence will stand affirmed.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.