## PEOPLE *v* ROBERT BROWN

1. HOMICIDE—MANSLAUGHTER—CAUSATION—INHERENTLY DANGEROUS ACT.

   A defendant cannot be found guilty of manslaughter while committing an unlawful act if death ensued as a result of the negligent acts of a third party or from a cause which is not directly connected with the unlawful act, but defendant can be found guilty of manslaughter where the act was inherently or naturally dangerous or the illegal activity was carried on in a negligent and careless manner (MCLA 750.321).

2. HOMICIDE—MANSLAUGHTER—CAUSATION—UNLAWFUL ACT—INHERENTLY DANGEROUS ACT.

   A conviction of manslaughter was proper where the deceased

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 40 Am Jur 2d, Homicide § 13 *et seq.*
Who other than actor is liable for manslaughter. 95 ALR2d 175.
[2] 40 Am Jur, Homicide § 87.

died as a result of a wound sustained while he and the defendant were struggling over a gun, the defendant was the aggressor, and the fight was part of the defendant's continuing illegal assault, because the assault was inherently and naturally dangerous to human life (MCLA 750.321).

Appeal from Recorder's Court of Detroit, Robert L. Evans, J. Submitted Division 1 November 8, 1971, at Detroit. (Docket No. 10076.) Decided January 18, 1972. Leave to appeal denied, 387 Mich 763.

Robert C. Brown was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *William L. Cahalan*, Prosecuting Attorney, *Dominick R. Carnovale*, Chief, Appellate Department, and *Angelo A. Pentolino*, Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow*, State Appellate Defender, for defendant.

Before: LESINSKI, C. J., and HOLBROOK and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. The defendant, originally charged with second-degree murder, was found guilty by the trial judge sitting without a jury of manslaughter, MCLA 750.321; MSA 28.553, and was sentenced to a prison term of from 5 to 15 years. He appealed as of right and is free on bond pending the outcome of this appeal.

The story begins on the evening prior to the date of the death which gave rise to defendant's convic-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tion. On that evening defendant was in the bar owned by the deceased, one Herman Frye. At that time defendant had difficulty remaining awake and was escorted to the door by one of the barmaids; whereupon defendant is reputed to have made certain threats to Mr. Frye that he was going to kill him.

Early the next evening Mr. Brown, while being simultaneously engaged in a game of pool and the drinking of beer at Mr. Frye's bar, was accused of cheating by his playing partner. When defendant threw the cue stick down on the table, Mr. Frye entered the picture. Frye told defendant not to wreck his place, placed the cue stick in the rack, turned out the light above the table, and returned to his position behind the bar.

Defendant followed Frye, uttering words of profanity and expressing the opinion that Frye was carrying a gun. Defendant, upon reaching Frye assaulted and struck him about the head. Frye managed to retreat into the kitchen, where he located a .38-caliber revolver in a cigar box on the top of the refrigerator. A struggle for possession of the gun began in earnest. Brown, a trained combatant, grabbed for Frye's wrist, and during the struggle two shots were fired, one entering the ceiling and the other entering the body of Frye. While the employees and customers were evacuating the premises, a third shot was fired, which entered the wall. Eventually Brown succeeded in gaining possession of the weapon and started to walk out. Frye, although wounded, secured another gun from the kitchen and fired at the defendant as he was leaving.

The court after listening to the testimony made the following determination:

"Gentlemen, I find as a fact in this case that the defendant, Mr. Brown, indeed, was the aggressor.

I find as a fact that the defendant, Mr. Brown, struck a blow to the deceased, Mr. Frye, prior to the time that Mr. Frye drew the gun. I further find that the fact in this case that the fatal shot occurred at a time when the defendant and the deceased were struggling over the gun and not at the time when the defendant had the pistol in his possession.

"I find the defendant guilty of manslaughter."

The defendant takes the position that the shooting was an accident. Defendant specifically does not claim that the shooting occurred as a result of an act of self-defense. Further, he asserts that the finding of fact on the part of the trial judge was insufficient to support a conviction of manslaughter, in that there was no proof that the homicide resulted directly from the assault. For authority he relies heavily on *People v Scott*, 29 Mich App 549 (1971). That case can be distinguished from the present situation, in that there the defendant attempted to force a vehicle off the road, and later, an unmarked patrol car, while in pursuit of defendant, collided with a DSR bus killing one of the officers. Clearly, that was an intervening occurrence not connected with the original assault.

The Court in *Scott, supra,* at 558 said:

"In criminal prosecutions there must be a more direct causal connection between the criminal conduct of the defendant and the homicide charged than is required by the tort liability concept of proximate cause."

There is no quarrel whatever with this conclusion. See also *People v Starkey*, 20 Mich App 492 (1969).

We find further elucidation of this rule in 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1667, p 2012:

"If, in doing an act which would have been a misdemeanor at common law, a person causes the death of another, he is guilty of manslaughter, and the same is true of offenses which are made misdemeanors by statute. As has been pointed out, however, the mere doing of an act prohibited by statute, which in itself is not inherently or naturally dangerous to human life, will not support a charge of manslaughter."

We quote also from *People* v *Barnes,* 182 Mich 179, 194 (1914):

"There seems to be no conflict in the decisions where the respondent is violating some statute, *and* where his manner is negligent and careless; the courts in such cases uniformly hold that he is guilty of manslaughter, if the death of some other person is the result."

Therefore, we can conclude that the defendant cannot be found guilty of manslaughter while committing an unlawful act if death ensued as the result of the negligent acts of a third party or from a cause which is not directly connected with said unlawful act; but that the defendant can be found guilty of manslaughter when the act was inherently or naturally dangerous, or the illegal activity was carried on in a negligent and careless manner. *Barnes, supra; People* v *Harris,* 214 Mich 145 (1921); *People* v *Ogg,* 26 Mich App 372 (1970).

As noted above, the trial court found that defendant was the aggressor and the fatal shot occurred while defendant and the deceased were struggling over the gun. Common knowledge dictates that a loaded revolver in the hands of two fighting combatants becomes a dangerous instrumentality which is capable and likely to bring about disastrous consequences. In accordance with the power granted this Court by GCR 1963, 820.1(6) to draw inferences

of fact, we find that the manner in which defendant carried on the fight was not only negligent and careless in nature, but also, under such circumstances, was "inherently and naturally dangerous to human life".

Since death resulted from a shot fired during the continuing illegal assault upon the deceased, while defendant was engaging in an act which was inherently and naturally dangerous to human life, the trial court properly found defendant guilty of manslaughter.

Affirmed and remanded to Detroit Recorder's Court for execution of the sentence.

All concurred.