PEOPLE *v.* GILLARD.

1. CRIMINAL LAW—INVOLUNTARY MANSLAUGHTER—EVIDENCE — RE-
MARKS AS TO SPEED OF AUTOMOBILE BY WITNESS—RES GESTÆ.

In a prosecution for involuntary manslaughter charged to
have been caused by defendant's negligent driving of his
automobile, testimony by a witness that while he was
standing listening and watching the automobile, he made
the comment that he believed a car was coming at a
very rapid speed, and that he said something was sure
to happen, was admissible as tending to show that wit-
ness' attention had been particularly called to the car at
the time, and that he distinctly remembered the occasion,
especially since there is force in saying that the state-
ment was part of the *res gestæ* of the occurrence.

2. SAME—CROSS-EXAMINATION AS TO TESTIMONY AT CORONER'S IN-
QUEST.

Error in sustaining objection to a question on cross-
examination of people's witness as to his testimony upon
the coroner's inquest that the car in which deceased
was riding was coming from the north was not reversible,
where the testimony of defendant as well as that of
all the other witnesses in the case was to the effect that
it was coming from the east, and not from the north,
and witness was interrogated later on the subject and
answered.

3. SAME—EVIDENCE—CONCLUSION.

Striking out the answer of a witness, on direct-examina-
tion, that the driver of the car in which deceased was
riding acted very much like a person intoxicated, was
not reversible error, since it was merely an expression of
opinion, and especially where witness later was permitted
to describe in detail all of the actions which he claimed
indicated intoxication.

4. SAME.

Nor was there any error in striking out the answer of
said witness to the question, "Did you make a special and
purposeful effort to discover from the breath of the driver

On evidence as to speed of automobile, see note in 34 L. R. A.
(N. S.) 778.

On opinion evidence as to speed of automobile, see note in L.
R. A. 1918A, 705.

whether he had been drinking or not?" where he had already gone into detail as to the actions and conduct of the driver as bearing upon the question of his intoxication.

5. SAME—PROSECUTING ATTORNEY—OPENING STATEMENT.
    The trial court was not in error in permitting the following statements to be made by the prosecuting attorney in his opening statement to the jury: In speaking of what he expected to prove by a certain witness: "They watched it, and the unspoken thought in the mind of R. was, as he will tell you, something is going to happen," nor, in speaking of another witness, "She gave just a glance, saw the closed car approaching Jefferson street to cross over Jefferson and to proceed west on Grand;" the objection being very technical; reasonable latitude must be given counsel in making an opening statement.

6. SAME—TRIAL—INSTRUCTIONS—PRESUMPTION OF INNOCENCE.
    The instruction of the trial court that defendant "is presumed, gentlemen, to be innocent until proven guilty beyond a reasonable doubt," although the only reference to the subject, is not open to the objection that it was not an adequate charge upon the subject of the presumption of innocence, in the absence of any request to charge thereon.

7. SAME—REASONABLE DOUBT.
    Upon the subject of reasonable doubt, the instruction of the trial court that "A reasonable doubt is a fair, honest doubt, growing out of the evidence in the case and based upon common sense and judgment. It is such a doubt that leaves your mind in such a condition that you cannot say that you have an abiding conviction, to a moral certainty, of the 'truth of the charge here made against this respondent. It is not an imaginary doubt nor a doubt based upon sympathy but just what it says—a reasonable doubt," held, very full and complete.

8. SAME—INSTRUCTIONS AS TO CREDIBILITY OF DEFENDANT.
    An instruction by the trial judge that the jury should give defendant's "testimony the same consideration as the testimony of any other witness except insofar as you may inquire into his motive and any interest he may have in the outcome of the case," after instructing them that it was their duty to determine who was

telling the truth, and that it was for them to determine what inferences should be drawn from the testimony and what weight and credit should be given it, is not open to the objection that the court singled out the defendant in instructing the jury as to the credibility of witnesses, for the court might well have gone further and instructed them that the defendant had an interest in the outcome of the case, which they might take into consideration.

9. SAME—ASSIGNMENTS TOO GENERAL.
Assignments in criticism of the charge as a whole, as argumentative of the people's case and 'in not charging the defendant's theory of the case, held, too general to receive consideration, and an unjust criticism, since defendant's theory of the case was stated very fully and fairly.

10. SAME—INSTRUCTIONS AS TO RIGHT OF WAY—MOTOR VEHICLES.
Where defendant had testified that he was going north and the car with which he collided was going west, there was no error in the instruction of the trial judge that the car going west had the right of way, since, as to who would have the right of way, under such circumstances, under the law, there can be no question.

Exceptions before judgment from Muskegon; Vanderwerp (John), J.    Submitted October 13, 1921. (Docket No. 171.)    Decided December 21, 1921.

Russell Gillard was convicted of the crime of involuntary manslaughter.    Affirmed.

*Macdonald & Macdonald,* for appellant.

*Merlin Wiley,* Attorney General, and *Harry W. Jackson,* Prosecuting Attorney (*Christian A. Broek,* of counsel), for the people.

STONE, J.    This case is here upon exceptions before sentence.    The defendant, 24 years old, was charged with and convicted of the crime of involuntary manslaughter, arising out of the alleged negligent driving

of an automobile in the city of Muskegon on the 10th day of May, 1920. It was at the trial the claim of the people that at about the hour of 6:30 p. m. of that day the defendant was driving a Dodge touring car north on Jefferson street in that city at an excessive and unlawful rate of speed; that at or about the same time one William Collier was being driven west on Grand avenue, approaching said Jefferson street, in a Dodge car with an enclosed top, operated by a chauffeur by the name of Ralph Ranney. At the time of the occurrence the pavement of the streets was wet and slippery and there was at the time a heavy mist, but it was not dark, and it was possible to see clearly. It was the claim of the people that at the intersection of said streets the two cars collided through the negligence of the defendant; that said Collier was thrown from the car in which he was riding, and the collision resulted in the death of said Collier, who died that night from the effects of the injuries there received. It was further claimed by the people that at the time of the accident the defendant was not only traveling at an excessive rate of speed exceeding 15 miles an hour, the lawful rate of speed, but was also traveling on the left side of the street; that upon approaching said intersection the defendant did not have his car under control as required by law and the ordinance of said city, and that he did not give the car occupied by said Collier the right of way as required by law, but drove said car at such a rate of speed and in such a manner as was wanton, reckless and grossly careless.

On the other hand, while the defendant admitted that at the time in question he was driving north on Jefferson street in a Dodge touring car, he denied that he was going at an excessive or unlawful rate of speed. He claimed that as he approached the intersection of the two streets, the car driven by the said Ranney

was so managed and driven that it turned north immediately before arriving at said intersection, and therefore led defendant to believe that he was turning to the right into Jefferson street ahead of defendant, and for that reason defendant turned his car to the left, so as to permit said Ranney to make his turn properly and easily; that Ranney's car after partially completing said turn was suddenly shifted back onto its original course, i. e., going west on Grand avenue; that at the time Ranney's car made such shift in direction, the defendant made every effort to avoid the collision by turning his car sharply to the right so as to pass behind the car conveying said Collier, but that it was impossible to avoid such collision, because of the conduct of the said Ranney in the management of his car. It appeared that Ranney's car was swung about on the wet and slippery pavement, after the collision, and struck a telephone pole standing at the northeast corner of the intersection of the streets. Both Ranney, the chauffeur, and Collier, who had been riding in the back seat of the car, were found lying on the ground. There was some evidence tending to show that Ranney was intoxicated at the time of the occurrence, but this was positively denied by Ranney. Defendant also testified that at the time of the accident the clutch on his car was loose, and for that reason his motor ran at a high rate of speed, although his car was not moving rapidly. This testimony was introduced to rebut evidence offered by the people as to the noise and speed of defendant's car.

Upon all of the material and pertinent questions in the case there was a sharp conflict in the evidence. The defendant was sworn in his own behalf and testified fully in the case. A perusal of the entire testimony in the record satisfies us that there was testimony which, if believed by the jury, was sufficient

216—Mich.—30.

to sustain the charge and to warrant a conviction. The case was submitted to the jury in a very full and lengthy charge.   By reason of certain assignments of error we quote from the charge as follows:

"The respondent has taken the stand in his own behalf, which he had a right to do.   You should give his testimony the same consideration as the testimony of any other witness except insofar as you may inquire into his motive and any interest he may have in the outcome of this case.   He is presumed, gentlemen, to be innocent until proven guilty beyond a reasonable doubt.

"A reasonable doubt is a fair, honest doubt, growing out of the evidence in the case and based upon common sense and judgment.   It is such a doubt that leaves your mind in such a condition that you cannot say that you have an abiding conviction, to a moral certainty, of the truth of the charge here made against this respondent.   It is not an imaginary doubt nor a doubt based upon sympathy, but just what it says—a reasonable doubt.

"The laws of this State provide, and the ordinances of the city to some extent also, that no person shall operate a motor vehicle on a public highway at a rate of speed greater than is reasonable and proper, having regard to the traffic and use of the highway, or so as to endanger life or limb of any person or the safety of the property, and shall not, in any event, while upon the highway run at a higher rate of speed than twenty-five miles an hour, and within the corporate limits of all cities and villages the rate of speed shall not be greater than ten miles an hour in the business portion of such city or village and not greater than fifteen miles an hour in all other portions. Upon approaching an intersecting highway and also in traversing such intersecting highway, a person operating a motor vehicle shall have it under control and operate it at such speed as is reasonable and proper, having regard to the traffic then on such highway and the safety of the public.   The State law and the city ordinances also provide that when motor vehicles approach an intersection of two or more public high-

ways or streets, the vehicle approaching from the right of the driver shall have the right of way; so in this case, gentlemen, as appears by the undisputed proof in this case, that Mr. Ranney with his taxicab was going west and Mr. Gillard coming down Jefferson street, going south.—

"*The Court:* Going north, I should say. In this case, gentlemen, from the undisputed proof, under the law the taxicab driven by Mr. Ranney, in which Mr. Collier was injured, would have the right of way in crossing that street at that point, in view of the direction in which Mr. Gillard was going, north.

"I charge you, gentlemen, that this place where the collision occurred, that is, the intersection of Jefferson street and Grand avenue, is not in the business portion of the city and therefore comes within the fifteen miles per hour provision that I have mentioned; so that in the residential district, where this collision took place the speed of motor cars should not, under the law, exceed fifteen miles an hour, and any one who exceeds that speed limit at that place or in that vicinity is committing an unlawful act. No man has the right to use a public street of a city as a speedway, but every man has the right to drive an automobile on the streets, just as much right as a man has to drive a buggy in it or to cross it on foot, but wherever a man uses a dangerous machine such as an automobile he must guard the exercise of that right with proper care and due regard for the lives and safety of people who have an equal right to be upon the streets."

There are 23 assignments of error, most of which are discussed by counsel. They relate to claimed errors in the admission and rejection of evidence; in permitting certain statements in the opening statement of the prosecuting attorney; and in the charge.

1. Was there error in the ruling on the evidence? This question is raised by assignments 2, 3, 4 and 20. The court permitted the witness Ryefield to testify as follows:

"*Q.* Now, while you and Mr. Schutter were stand-

ing there on the school steps listening, and watching this car, did you make any comment on this car?

"*A.* I said I believed a car was coming at a very rapid speed, or was speeding. * * * Yes, sir; I believe I said something was sure to happen if any car was—well, I thought something was going to happen about that time."

Was the reception of, and refusal to strike out, this testimony reversible error? We think not. It was evidence tending to show that witness' attention had been particularly called to the car at the time, and that he distinctly remembered the occasion. The question is not ruled by *People* v. *Courtney,* 178 Mich. 137, and cases there cited. There is force in saying that the statement was a part of the *res gestæ* of the occurrence.

The 19th assignment alleges error in sustaining the objection of the prosecuting attorney to a question asked of the same witness on cross-examination relative to his testimony upon the coroner's inquest, that Ranney's car was coming from the north. While the answer to this question might well have been permitted to stand, we do not think the ruling of sufficient materiality or importance to reverse the case. The testimony of the defendant and of his friend Fink who was riding with him, as well as that of all the other witnesses in the case, was to the effect that Ranney's car was coming from the east, and not from the north. The witness was interrogated later on the subject and answered.

The 20th assignment alleges error in striking out from the direct testimony of the witness Ralph Balbirnie the following:

"*Q.* Whether or not Mr. Ranney showed other evidence of being under the influence of liquor?

"*A.* He acted very much like a person intoxicated."

We think this answer was a mere expression of

opinion.   An inspection of the record will show that the witness was later permitted to, and did, in detail describe all of the actions which he claimed indicated intoxication, and the mere striking out of his conclusion was not reversible error; and the same may be said of the 21st assignment of error in striking out the answer to the question:   "Did you make a special and purposeful effort to discover from the breath of Mr. Ranney whether he had been drinking or not?"   This question occurred after the witness had gone into detail as to the actions and conduct of Ranney as bearing upon the question of his intoxication.   We do not think there was any error in sustaining the objection to this question.

2. Was there error in permitting the following statements (assignments 1 and 22) to be made by the prosecuting attorney in his opening statement to the jury?   In the course of his opening statement the prosecutor, in speaking of what he expected to prove by a certain witness, said:

"They watched it, and the unspoken thought in the mind of Mr. Ryefield was, as he will tell you, something is going to happen."

And the following, speaking of another witness:

"She gave just a glance, saw the closed car approaching Jefferson street to cross over Jefferson and to proceed west on Grand."

We fail to find any reversible error in this part of the statement complained of.   The objection is very technical.   Some reasonable latitude must be given to counsel in making an opening statement, and what we have said as to the testimony of Mr. Ryefield is applicable here.   We find no error in this branch of the case.

3. Was there error in the charge?   Assignments 5, 6 and 7 complain of the charge, because, it is said,

the only reference upon the subject of the presumption of innocence was as follows: "He is presumed, gentlemen, to be innocent until proven guilty beyond a reasonable doubt." Counsel complain that this was not an adequate charge upon the subject. It certainly is a very clear announcement of the correct rule; and in the absence of any request to charge upon the subject, we think the objection is not well taken. Upon the subject of reasonable doubt, the charge, as we have quoted above, appears to have been very full and complete.

The 8th and 9th assignments of error complain that the court singled out the defendant in instructing the jury as to the credibility of witnesses and used the language above quoted by us in the charge, commencing with the words: "Respondent has taken the stand in his own behalf which he has a right to do," etc. Counsel are in error when they say the court "singled out the defendant" upon this subject. The court had already instructed the jury that it was their duty to determine who was telling the truth, and for them to determine what inferences should be drawn from the testimony, and what weight and credit they should give the testimony. Then came the special reference to the defendant. The court instructed them that they should give his testimony the same consideration as the testimony of any other witness, except in so far as they might inquire into his motive and any interest he might have in the outcome of the case. We find no error in this part of the charge. The court might well have gone further and instructed the jury that the defendant *had* an interest in the outcome of the case, which they might take into consideration. See *People* v. *Johnson*, 215 Mich. 221, at page 229, and recent cases there cited.

Assignments 10, 14, 15 and 18 are in criticism of the charge as a whole, as argumentative of the people's

case and in not charging the defendant's theory of the case. Not only are these assignments too general to receive consideration, but we think they are an unjust criticism of the charge, which is too lengthy to be here inserted. It stated defendant's theory of the case very fully and fairly.

The 17th assignment of error complains of that part of the charge, above quoted, beginning with the words:

"So in this case, gentlemen, as appears by the undisputed proof in this case, that Mr. Ranney with his taxicab was going west and Mr. Gillard coming down Jefferson, going north," etc.

We fail to see any error in this part of the charge. The routes of both the defendant and of the chauffeur Ranney are stated by the court as testified to by the defendant, and as to who would have the right of way under such circumstances, under the law, there can be no question.

The other assignments of error complain that the court did not charge the jury sufficiently as to the credibility of witnesses, and repeat the criticism that the instructions were argumentative. We are of the opinion that there is no merit in these assignments. The charge seemed to be a very fair one, and, in the absence of requests to charge, we think the rule applied by us in the case of *People* v. *Rogulski,* 181 Mich. 481, and other recent cases, should be applied here.

Considering the entire record and that there was evidence adduced upon the trial which, if believed by the jury, was sufficient to warrant a conviction, we do not think it our duty to disturb the verdict.

Upon the subject of negligence and the law relating to involuntary manslaughter as applied in similar cases, we refer to the following recent decisions of this court: *People* v. *Harris,* 214 Mich. 145; *People* v. *Townsend,* 214 Mich. 267; *People* v. *Schwartz,* 215 Mich. 197, and cases there cited.

Finding no reversible error in the case, the conviction of the defendant is affirmed, and the case will be remanded to the court below to proceed to judgment.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.