*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

STEVE ELLIS KARACSON,

       Defendant-Appellant.

UNPUBLISHED
February 25, 2020

No. 346236
Wayne Circuit Court
LC No. 18-002889-01-FC

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Defendant, Steve Ellis Karacson, was convicted by a jury of arson of an insured dwelling, MCL 750.76(1)(a), and insurance fraud, MCL 500.4511. This matter arises out of a fire that destroyed defendant's home. Defendant initially claimed he was in Kentucky at the time of the fire, but an examination of his cell phone records revealed he had been in the area of his home less than an hour before the fire was reported, and he purchased a gasoline can and utility gloves a few hours previously. Defendant made a claim on his homeowner's insurance policy, and investigators concluded that the fire had been intentionally set using gasoline as an accelerant. The trial court sentenced defendant to imprisonment for 7 years to 7 years and 1 day for arson, and 1 to 4 years for insurance fraud. In two briefs filed by different attorneys and in a Standard 4 brief, defendant challenges his convictions and his sentences. Defendant's appeal is by right. We affirm.

## I. BACKGROUND

At about 8:20 p.m. on November 6, 2017, 911 received a call regarding a fire at defendant's house in Inkster, Michigan. When emergency personnel arrived, the house was fully engulfed in flames, and it took two to three hours to fully extinguish the fire. The police and defendant's homeowner's insurance company each launched investigations into the cause of the fire. Each independently concluded that the fire had multiple origin points, which was indicative of an intentionally set fire. They also each encountered an obvious smell of gasoline throughout the remains of the house. The investigators ruled out the possibilities that the fire had occurred naturally, due to electrical issues or due to natural gas. Rather, they concluded that the fire had been deliberately set using gasoline as an accelerant.

-1-

The police and the insurance company's investigator also both interviewed defendant. Defendant denied storing any flammable liquids in his house. Defendant denied to both investigators that he had been in Michigan at the time of the fire. Defendant claimed he had left Michigan on November 4 with his dogs to take them to Kentucky. He claimed he returned to Michigan just after midnight on November 7—in other words, about four hours after the fire had started. Defendant claimed he did not find out about the fire until about 7:20 a.m. on November 7. Rather than checking on his house, defendant kept a scheduled appointment at 9:00 a.m. The person with whom defendant met testified that defendant told him that his house was on fire, but when the person suggested that defendant leave to check on his house, defendant stated that he thought the fire was a joke.

The police analyzed defendant's cell phone records. The records confirmed that defendant left Michigan on November 4, 2017, and that he arrived at Kentucky on November 5. However, on November 6, at 1:26 p.m., defendant's cell phone connected with a cellular tower in Dearborn, Michigan. From 2:00 p.m. until 6:47 p.m., his cell phone connected to a tower in Wyandotte, Michigan. Then, at 7:41 p.m., defendant's cell phone connected to a tower in Inkster, Michigan, where defendant lived. This connection occurred about 40 minutes before the onset of the fire. There were no further connections to any cellular telephone towers from that time until the next morning. Defendant was arrested on the basis of the discrepancy between his claimed location and his actual locations as revealed by the cell phone records.

When defendant was arrested, he was found to have on his person a receipt from a hardware store in Wyandotte, showing that he had purchased a five-gallon gasoline can and a pair of utility gloves on November 6, 2017, at 3:12 p.m. The manager of the store confirmed that she had sold the can and gloves to defendant at that time. The insurance company's investigator found a new, or nearly new, gasoline can outside defendant's house. The can still had liquid gasoline in it. A former tenant of defendant testified that she had offered to purchase defendant's house in September of 2017 for $20,000, which defendant rejected as inadequate. Defendant also told the tenant that he could get more money for the house from his insurance.

As will be discussed in more detail, defendant had a contentious relationship with his appointed trial attorneys, apparently based in part on defendant's desire for his attorneys to perform certain acts on his behalf and at his direction. At the beginning of trial, defendant requested another substitute counsel, which the trial court refused. Defendant elected to represent himself instead of proceeding with his appointed counsel, which the trial court permitted. Unfortunately, due to defendant's nescient command of legal concepts, legal procedure and rules, or logic, the trial court was required to interrupt defendant on several occasions to sustain objections or explain that defendant was not permitted to do something. Further complicating the proceedings, on the second day of trial, it was discovered that one of the jurors had made an improper remark presupposing defendant's guilt, which was overheard by three other jurors. After dismissing the juror who made the remark, interviewing all of the remaining jurors individually, and confirming that the three jurors who overheard the remark were not affected by the remark, the trial court denied a motion for a mistrial. Defendant was convicted and sentenced as described.

II. MOTION FOR DIRECTED VERDICT

In his brief on appeal and in his Standard 4 brief, defendant first argues that the trial court erred by refusing to grant his motion for directed verdict as to his arson charge.[1]  We disagree.

"When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).  Reasonable inferences drawn from circumstantial evidence may constitute proof of the essential elements of a crime sufficient to overcome a motion for directed verdict. *People v Peña*, 224 Mich App 650, 659; 569 NW2d 871 (1997).  Minimal circumstantial evidence may also be sufficient to prove a defendant's intent and state of mind. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).  It is generally the exclusive province of the jury to resolve conflicts in the evidence and in any reasonable conflicting inferences from the evidence. *Nichol v Billot*, 406 Mich 284, 301-302; 279 NW2d 761 (1979).  The jury is also entitled to decide what evidence to believe and disbelieve. *People v Howard*, 50 Mich 239, 242; 15 NW 101 (1883).

The elements of arson of an insured dwelling are: (1) a defendant willfully or maliciously; (2) burns, damages, or destroys by fire or explosive; (3) any dwelling; (4) that is insured against loss from fire or explosion; (5) with the intent to defraud the insurer.  MCL 750.76(1)(a).  There is no dispute that defendant's dwelling was insured and was burned, nor is there any dispute that defendant made an insurance claim for his house after the fire.  Defendant implicitly contends, incredibly, that his house could have burned due to natural or accidental causes.  However, the evidence overwhelmingly established that the fire had been set intentionally.  Consequently, the only facts seriously at issue are whether defendant is the person who set the fire, and if so, whether he set the fire with the intent to defraud his insurer.  Defendant makes an unclear reference to the presumption of innocence enjoyed by criminal defendants.  See *People v Banks*, 249 Mich App 247, 258-259; 642 NW2d 351 (2002).  However, in deciding a motion for directed verdict, the trial court considers only whether the jury *could* reasonably find beyond a reasonable doubt that both questions should be answered in the affirmative.  Denying a motion for directed verdict in no way undermines the presumption of innocence, but rather permits the trier of fact to play its role in the criminal trial process.[2]

---

[1] In his motion before the trial court, defendant did not articulate the charge or charges to which he intended the motion to apply.  However, in response, the trial court only addressed the arson charge, which defendant seemingly accepted.  In his briefs on appeal, defendant only addresses the arson charge.  We therefore likewise address only defendant's arson charge.

[2] In any event, the trial court correctly instructed the jury that it must presume defendant to be innocent and must find him not guilty unless it was satisfied that the prosecutor had carried the People's duty of proving every element of the charged offenses beyond a reasonable doubt.  The motion for directed verdict was made and decided out of the jury's presence.

Defendant presents no actual argument as to the two outstanding factual issues. We could therefore consider this argument abandoned. *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Nevertheless, the evidence revealed that defendant made a remark about possibly being able to get more money for his house from his insurance company, which could reasonably imply motive. Defendant carefully removed his dogs from the house shortly before the fire, which could reasonably imply that he intentionally removed them from anticipated harm's way. Defendant lied to the police about his whereabouts when the fire started, which could reasonably imply that he was aware the fire had been intentionally set and wished to mislead the police into not investigating him further. Defendant had ample opportunity to set the fire, and he claimed he had secured the house, limiting the likelihood that anyone else could have set the fire. Shortly before the fire, defendant purchased a gasoline can and gloves, which shows that he had the immediate ability to set the fire, and, when considered in light of the other evidence, could reasonably imply that he actually did set the fire.

It has long been established that the elements of a crime may be proved beyond a reasonable doubt solely on the basis of "[c]ircumstantial evidence and reasonable inferences drawn therefrom" without offending the presumption of innocence. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993). The evidence presented here was not "as consistent with innocence as with guilt." Cf. *People v Sobczak*, 344 Mich 465, 469-470; 73 NW2d 921 (1955). Consequently, the trial court properly denied defendant's motion for directed verdict and permitted the jury to decide the case.

### III.  WITNESS COMMENT ON DEFENDANT'S PROBATION

In his brief on appeal, defendant argues that he was deprived of a fair trial by a single, unresponsive reference made by one witness to defendant having been on probation. We disagree.

The witness was the person with whom defendant met on the morning after the fire. The witness was the claims consultant assigned by the insurance company to defendant's claim. The trial court asked the witness to clarify whether defendant had told her that he had been in Michigan or Kentucky at the time of the fire. In response, the witness testified that defendant said he "had to be back to see [his] probation officer Tuesday morning at 9:00 a.m.," and further explained that defendant's explanation of his whereabouts had otherwise been "kind of confusing to us as well." We presume that the witness's remark was improper and impermissible. However, "[n]ot every instance of mention before a jury of some inappropriate subject matter warrants a mistrial. Specifically, an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Waclawski*, 286 Mich App 634, 710; 780 NW2d 321 (2009) (quotation and alteration omitted).

Although it appears that the witness was genuinely attempting to answer the question, her answer was unresponsive to the question asked. Furthermore, no indication was ever given as to the crime for which defendant was on probation. Neither any witness nor the prosecutor mentioned probation again, nor did they made any effort to suggest that defendant's status as a probationer was relevant. Indeed, as defendant points out, "[t]here was no other reference during the trial to any nefarious behavior by the defendant not relating to the charged conduct." The prosecutor never attempted to suggest to the jury that defendant had a criminal history, or that he likely acted in conformity with any kind of poor character, in contrast to *People v Fredericks*, 125 Mich App

114, 118; 335 NW2d 919 (1983), upon which defendant relies despite its questionable status as "good law," see *People v Buckey*, 424 Mich 1, 11-14; 378 NW2d 432 (1985).

Based on the other evidence in this matter, we are not persuaded that the single, isolated, and nonspecific reference to defendant having been on probation had any influence on the jury's verdict. See *People v Lukity*, 460 Mich 484, 494-496; 596 NW2d 607 (1999). Defendant may arguably have received an imperfect trial, but because perfect trials are aspirational and never actually occur in practice, defendants are only entitled to fair trials. *People v Pickens*, 446 Mich 298, 313-314; 521 NW2d 797 (1994); *People v Miller*, 482 Mich 540, 559-560; 759 NW2d 850 (2008). The witness's remark about defendant's probation did not deprive him of a fair trial.

## IV. MISTRIAL FOR IMPROPER COMMENT BY JUROR

In his brief on appeal, supplemental brief on appeal, and Standard 4 brief, defendant argues that he was entitled to a mistrial based on an improper remark made by one of the jurors. We disagree.

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). A trial court abuses its discretion by denying a mistrial based on juror misconduct only if defendant's ability to get a fair trial was actually harmed, meaning the misconduct "affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment." *People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997) (citation omitted).

On the second day of trial, one of the jurors told the trial court that during jury assembly that morning, she heard someone say something like, "you know he did it." The trial court extensively questioned all of the jurors about the "possible irregularity." The trial court's questioning of the jurors did not imply that any such statement had been made, but rather whether they had overheard anyone make a remark about defendant being guilty or not guilty. Only three jurors had overheard the remark. The trial court identified one juror who had probably made the remark and excused that juror. All of the remaining jurors agreed that such a remark would be inappropriate, that they were obligated to presume defendant's innocence, and that they should not prejudge the matter until they had heard all of the evidence. The trial court expressly stated that it would have granted defendant's requested mistrial if it "had any indication that [the excused juror] had tainted the jury . . . But all indications are to the contrary."

Defendant's argument on appeal consists of pure speculation at best, and a merely conclusory statement at worst. In order to conclude that any "real and substantial possibility" exists that the jury's verdict was affected, see *People v Budzyn*, 456 Mich 77, 89; 566 NW2d 229 (1997), we would have to presume that all of the jurors were lying. There is simply no basis in the record for us to draw such a conclusion. Furthermore, as discussed, the evidence of defendant's guilt was overwhelming. See *id*. at 89-90. We reiterate that defendant may have received a somewhat imperfect trial, but he received the fair trial to which he was entitled. *Pickens*, 446 Mich at 313-314; *Miller*, 482 Mich at 559-560. The trial court clearly took the possibility of granting a mistrial seriously, and we find no abuse of discretion in its determination that a mistrial was not warranted.

-5-

V. SELF-REPRESENTATION AND SUBSTITUTE COUNSEL

In his supplemental brief on appeal and in his Standard 4 brief, defendant argues that he was deprived of his right to counsel because the trial court refused to permit defendant to obtain substitute counsel on the morning of the first day of trial and instead permitted defendant to represent himself. We disagree.

This argument turns on a combination of two different concepts: the right to substitute appointed counsel, and the right to self-representation. We review for an abuse of discretion a trial court's decision whether to permit a defendant to represent himself and whether to grant a substitution of counsel. *People v Hicks*, 259 Mich App 518, 521; 675 NW2d 599 (2003); *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). As a general matter, we review underlying factual findings for clear error. See *People v Williams*, 470 Mich 634, 640-641; 683 NW2d 597 (2004). Whether a defendant's waiver of the right to counsel is "knowing" and "intelligent" is reviewed de novo. *Id*.

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause *and* where substitution will not unreasonably disrupt the judicial process. [*People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991) (emphasis added).]

Defendants have a limited right to discharge counsel during a trial. *People v Henley*, 382 Mich 143, 148; 169 NW2d 299 (1969). "Good cause" to obtain substitute counsel may exist "where a *legitimate* difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Mack*, 190 Mich App at 14 (emphasis added). However, "decisions about defense strategy, including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." *Strickland*, 293 Mich App at 398 (footnotes omitted).

It is clear from the record that the alleged breakdown in defendant's relationship with his trial counsel arose out of defendant's misapprehension that he had a right to direct appointed counsel to perform whatever acts he wished or conduct his trial in whatever way he deemed fit. See *People v LaMarr*, 1 Mich App 389, 393; 136 NW2d 708 (1965). Appointed counsel declined to file a number of motions on defendant's behalf that, although counsel did not use such language, counsel clearly believed to be meritless or frivolous. Appointed counsel also clearly believed that defendant's theory of the case was untenable, which, based on the bewildering conspiracy theory defendant pursued, was likely a reasonable conclusion. Defendant and his appointed counsel undoubtedly had a difference of opinion as to trial strategy. However, because that difference of opinion was clearly as to whether counsel should engage in unethical, frivolous, or meritless

conduct, it cannot be a legitimate difference of opinion.[3]  See *People v Mitchell*, 454 Mich 145, 163-164; 560 NW2d 600 (1997).  We are also not persuaded that the trial court erred in concluding that a substitution of counsel on the morning of trial would unreasonably disrupt the judicial process.  Consequently, defendant has not established that he was entitled to the appointment of substitute counsel.

Defendant affirmatively requested of the trial court that he be permitted to represent himself.  The trial court warned defendant that he was facing a life offense and that defendant would be required to comply with the same procedural and substantive rules as an attorney.  The trial court further warned defendant that although it would "rather not," if defendant represented himself, the court might have to "be on top of [him] constantly."  The trial court gave defendant an opportunity to ponder the implications and consult with his trial counsel.  Ultimately, the trial court gave defendant a choice between acting as his own attorney with his appointed counsel as backup, or proceeding with his appointed counsel.

The trial court was required to establish that defendant's request to represent himself was unequivocal; that defendant was aware of the dangers he faced by acting as his own attorney; and that defendant's request was knowing, intelligent, and voluntary.  See *People v Russell*, 471 Mich 182, 190; 684 NW2d 745 (2004).  Before allowing a defendant to represent himself, a court must establish that the defendant was sufficiently competent in general to make the choice knowingly, intelligently, and "with eyes open."  *People v Dennany*, 445 Mich 412, 432; 519 NW2d 128 (1994).  In contrast, the defendant's legal competence is irrelevant.  *Id.*  Here, the trial court clearly made these determinations properly.  The trial court recognized that defendant would pose some challenge to its duty to ensure that the procedural and substantive rules were followed during the trial, but it was clearly willing to accept that burden.  See *id.*  The trial court's advice to defendant substantially complied with MCR 6.005(D)(1), and the opportunity it gave defendant to consult with counsel substantially complied with MCR 6.005(D)(2).  See *Russell*, 471 Mich at 190-192 (rejecting a "litany approach" in favor of "substantial compliance" for the court rule so long as the defendant's waiver of counsel otherwise satisfies the constitutional requirements of being unequivocal, knowing, intelligent, voluntary, and not unduly disruptive).  Therefore, the trial court did not abuse its discretion by allowing defendant to represent himself, and we reject defendant's contention that his self-representation was involuntary.

## VI.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his supplemental brief on appeal and in his Standard 4 brief, defendant argues that he received ineffective assistance of counsel because his appointed attorney did not file certain motions, subpoena certain witnesses, or obtain certain experts.  We disagree.

First, the defendant must show that counsel's performance fell below an objective standard of reasonableness.  *People v Russell*, 297 Mich App 707, 715-716; 825 NW2d 623 (2012).  The

---

[3] To the extent defendant's differences of opinion with assigned counsel duplicate his arguments pertaining to ineffective assistance of counsel, we will discuss those arguments below and not repeat them here.

Court must analyze the issue with a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the test requires that the defendant overcome the presumption that the challenged action or inaction might have been sound trial strategy. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). Decisions about whether to call or question a witness are presumed to be matters of trial strategy. *Russell*, 297 Mich App at 716. Failing to call a witness only rises to the level of ineffective assistance of counsel if it deprives the defendant of a substantial defense. *Id*. Second, the defendant must show that, but for trial counsel's deficient performance, a different result would have been reasonably probable. *Id.* at 715-716.

We have already discussed the fact that counsel cannot be ineffective for refusing to carry out a client directive that counsel reasonably believes is unethical, illegal, frivolous, or otherwise improper. *Mitchell*, 454 Mich at 163-164; see also *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Furthermore, defendant must establish both that counsel committed an objective error and that the error caused defendant prejudice. *Strickland*, 466 US at 687; *Pickens*, 446 Mich at 311, 314. Several of defendant's assertions of ineffective assistance are based on counsel's failure to file certain motions that the trial court actually accepted and actually ruled on. Thus, even if the motions had legal merit and counsel committed an error by failing to file the motions, neither of which we need to consider, counsel's neglect necessarily caused defendant to suffer no prejudice.

Otherwise, defendant appears to contend that he received ineffective assistance of counsel because (1) counsel did not subpoena two witnesses despite having been given the witnesses' phone numbers, and (2) counsel did not obtain an expert witness in cell phone analysis and an expert witness in fire analysis. Defendant has not provided us with any affidavits from any proposed witnesses, so he has not established a factual predicate for his claim. See *People v Carbin*, 463 Mich 590, 601; 623 NW2d 884 (2001). Defendant has not provided us with even a vague idea of what concrete exculpatory evidence he expects the proposed experts to have provided, and we decline to guess. Defendant has explained, albeit minimally, what general testimony he expects the two other witnesses to have provided. On that basis, we find that defendant was not prejudiced by their absence, and counsel was not ineffective for failing to pursue them.

One of the witnesses allegedly wanted to purchase defendant's house and was willing to offer $40,000, which was more money than he had been offered by his former tenant. However, defendant made an insurance claim for $167,000, which was the limit of his policy. The alternative purchase offer is still far below what defendant seemingly expected to receive from the insurance company, making its exculpatory value questionable. In any event, defendant successfully introduced the fact that he supposedly had a buyer for his house through the insurance company's claim consultant, and the trial court permitted him to argue that fact to the jury, so defendant was not prejudiced by the absence of the witness.

Defendant's other witness would supposedly have offered an alibi that defendant had been in Wyandotte "all day and night on November 6, 2017," the day of the fire. Given the objective evidence that defendant had been in Inkster shortly before the fire, we do not fault counsel for declining to pursue this witness. Again, counsel cannot be ineffective for refusing to pursue a course of action counsel reasonably believes to be frivolous, perjurious, unethical, or otherwise improper. See *Mitchell*, 454 Mich at 163-164; *Ericksen*, 288 Mich App at 201.

Defendant also argues that his former tenant who had offered to purchase defendant's house should have been impeached with her criminal or psychiatric history.[4] In any event, the witness, by her own admission on the stand, had a closed head injury from an automobile accident. From comments made by the prosecutor during closing argument, it was readily apparent from her testimony that she "may not pick up on things as fast." Defendant successfully elicited from her that she took "several medications," including Xanax and Topamax, and despite the trial court's admonition that he was straying from permissibility, an implication that she may have had some other psychiatric issues. Of more proper relevance, defendant further elicited that after he rejected the witness's "low ball" offer to buy his house, their ensuing discussion became "pretty heated."

It is clear from defendant's questioning at trial, and our best guess at defendant's haphazard collection of statements in his Standard 4 brief, that defendant wanted to impeach the witness by establishing her character. Defendant accurately observes that a witness's bias and credibility are almost always relevant. *People v Layher*, 464 Mich 756, 762-765; 631 NW2d 281 (2001). However, relevant evidence may nevertheless be inadmissible. *Id*. at 765. A witness's arrest history might be relevant and admissible, but it is not relevant *per se*. *Id*. at 767-771. Defendant has not explained how the witness's arrest history has any actual relevance to her memory or her motives in this case. Otherwise, "[e]vidence of a person's character or a trait of character" generally "is not admissible for the purpose of proving action in conformity therewith on a particular occasion." MRE 404(a). Defendant's interest in the witness's arrest history appears to have no other purpose, so the trial court properly deemed it inadmissible. In any event, defendant cannot establish prejudice, because he successfully established that the witness might not have been entirely reliable and might have had some motive to lie. The witness testified that she had no reason to lie, and the jury was entitled to believe the witness.

In summary, we find no basis to conclude that defendant received ineffective assistance of counsel, and although he may not have been able to pursue his theory of the case in the manner he wished, he was able to present the salient points to the jury.

## VII. SENTENCE

In his supplemental brief on appeal, defendant argues that the trial court improperly imposed excessive costs. In his Standard 4 brief, defendant argues that the trial court's sentence for his arson conviction violated the prohibition against minimum sentence terms exceeding two-thirds of the maximum sentence. We disagree with both arguments.

Because defendant did not object to the trial court's imposition of $1,300.00 in costs, this issue is unpreserved, *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009), and we review it for clear error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). MCL 769.1k(b)(*iii*) provides that the trial court may impose "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case . . . " It may impose costs based on the average case.

---

[4] However, we note that it is difficult for us to discern whether defendant attributes that failure to counsel or to the trial court.

-9-

*People v Cameron*, 319 Mich App 215, 235; 900 NW2d 658 (2017). The trial court did not provide an ideal record, but we take notice that according to the State Court Administrative Office, the average cost of a felony case in Wayne Circuit Court is $1,439.60. We are not persuaded that the trial court's imposition of costs was clearly improper.

Defendant's argument regarding the so-called "two-thirds rule," or the "*Tanner*[5] rule," is inapposite. Under the "*Tanner* rule," the minimum term of an indeterminate sentence must not exceed two-thirds of the maximum term. *People v Thomas*, 447 Mich 390, 392; 523 NW2d 215 (1994). Defendant accurately observes that 7 years is more than two-thirds of 7 years and 1 day. However, as was discussed at sentencing, defendant's arson conviction is punishable by a maximum term of imprisonment for "life or any term of years." See MCL 750.76(3)(a). The "*Tanner* rule" simply does not apply to such sentences. *People v Floyd*, 490 Mich 901, 902; 804 NW2d 564 (2011). We find no error in the trial court's sentence.

VIII. ALLEGED JUDICIAL IMPROPRIETY

In his Standard 4 brief, defendant presents a confusing accumulation of unclear arguments to, apparently, the general effect that the trial court engaged in various acts of impropriety. These alleged improprieties included reassigning his case from one judge to another, interfering with defendant's efforts to question witnesses and admonishing defendant in front of the jury, excluding certain evidence, and other matters already discussed above. Much of defendant's argument is premised on defendant's obvious misapprehensions of the law, procedural rules, and evidentiary rules. For the most part, we find defendant's arguments to reflect a tragic example of what can happen when a person untrained in either law or logic attempts to deploy both.

Defendant presents several points of law without citation to any authority, probably because they are simply wrong and no such authority exists. For example, defendant contends that the trial court erred by defining reasonable doubt to the jury. This is simply wrong. The trial court is not required to define "reasonable doubt" for the jury, and it may not give the jury an inaccurate definition of "reasonable doubt." *People v Allen*, 466 Mich 86, 90-93; 643 NW2d 227 (2002). However, the trial court is not prohibited from providing the jury with a correct definition of "reasonable doubt." *Id*.; *Victor v Nebraska*, 511 US 1, 5; 114 S Ct 1239; 127 L Ed 2d 583 (1994). Here, the trial court read to the jury the definition of reasonable doubt set forth in M Crim JI 1.9(3)[6], the general language of which has long been established as a correct definition. *Allen*, 466 Mich at 88 n 1; *People v Gillard*, 216 Mich 461, 466, 470; 185 NW 734 (1921). For another example, defendant contends that the prosecutor was obligated to perform a background check on

---

[5] *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972).

[6] M Crim JI 1.9(3) presently reads: "A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but a doubt based on reason and common sense. A reasonable doubt is just that [sic] a doubt that is reasonable, after a careful and considered examination of the facts and circumstances of this case." All predecessor model jury instructions defining "reasonable doubt" have used very similar language.

all witnesses. We have been unable to find any authority from which such an extraordinary proposition could even be implied.

Defendant presents a variety of citations to cases from other jurisdictions. Cases from other jurisdictions, including lower federal courts, might have some persuasive value, but they are not binding on this Court. *People v Woodard*, 321 Mich App 377, 385 n 2; 909 NW2d 299 (2017). Defendant presents what appear to be summaries of what he believes to be the salient points from those cases, but he does not explain how most of them are supposed to be relevant to the instant case. Several of defendant's citations do not even appear to exist. Absent unusual circumstances not present here, this Court will not go to extreme efforts to decipher an incomprehensible or poorly explained argument and craft a better argument on behalf of a party. *People v Harlan*, 258 Mich App 137, 140; 669 NW2d 872 (2003); *Cameron*, 319 Mich App at 232. Criminal defendants appearing in propria persona are held to "less stringent standards than formal pleadings drafted by lawyers." *Hanes v Kerner*, 404 US 519, 520; 92 S Ct 594; 30 L Ed 2d 652 (1972); see also *People v Herrera*, 204 Mich App 333, 338-339; 514 NW2d 543 (1994). However, such defendants remain obligated to provide support for their claims and an argument that is at least intelligible. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976).

We are unable to comprehend defendant's argument regarding the reassignment of his case. Defendant apparently was surprised by the reassignment, but he nevertheless did not miss any court appearances of which we are aware. Defendant contends that the reassignment caused him to be unable to file certain motions, but the trial court actually accepted those motions as if they had been properly filed, gave them consideration, and ruled on them. Presuming the reassignment was in some way irregular, we cannot comprehend how defendant was prejudiced. Regarding the exclusion of evidence, to the extent we have not already discussed any particular evidence and to the extent defendant provides a coherent reason to believe the evidence even exists, we find no merit in any argument we can discern suggesting that the evidence was admissible or legally relevant.

The most significant argument defendant presents, and the most easily understood, concerns the trial court's interruptions of defendant's examination of witnesses and explanations that defendant was attempting to do something impermissible. We have reviewed the transcripts of the trial, and we have found no occasion upon which the trial court appears to have precluded defendant from asking a legally proper question. As the trial court warned defendant, he would be obligated to comport with the law and with the rules of procedure and evidence. The trial court was obligated to ensure that defendant did not exceed what would be permitted of any lawyer. We find that the trial court displayed remarkable patience and made heroic efforts to accommodate defendant's obvious incomprehension of those rules. The right to present a defense does not include a right to violate the law, delve into irrelevancies, or flout rules of evidence and procedure. *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984); *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982). The trial court did not commit any impropriety or display any bias that we can discern.

IX. "MOTION FOR PEREMPTORY REVERSAL"

In his Standard 4 brief, defendant finally presents what he calls a "motion for peremptory reversal." To the extent defendant's "motion" is comprehensible, it is actually an argument that

-11-

he was impermissibly convicted of violating a non-existent statute. Defendant apparently fails to understand the difference between a charge code and a statute. Defendant's judgment of sentence, which we infer to be the source of defendant's confusion, reflects that his "arson of insured dwelling" conviction is based on the charge code "750.761A." Defendant accurately observes that there is no such statute as "MCL 750.761A." Although understandably an opaque practice to those unfamiliar with it, the charge code of 750.761A is, in fact, a reference to MCL 750.76(1)(a). Defendant was therefore charged and convicted accurately. We further note that defendant's reference to MCL 750.76(3)(a) refers to the statutorily defined punishment, not to the conduct that constitutes a violation of the law. Defendant's purported motion is premised on a reasonable misunderstanding, but we deny that motion.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel